In the

# United States Court of Appeals

### For the Seventh Circuit

No. 20-3458

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BENJAMIN BARRY KRAMER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:87-cr-40070 — **J. Phil Gilbert**, *Judge.*

ARGUED OCTOBER 1, 2021 — DECIDED FEBRUARY 7, 2022

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Before he ended up in prison, Benjamin Barry Kramer led an adventurous life. Not only was he once the U.S. open class offshore powerboat champion, he was also a successful drug lord and money launderer who made millions smuggling vast quantities of marijuana. His daring persisted even after his arrest when he tried to escape

prison hanging off the skids of a helicopter.[1] He was convicted in the Southern District of Illinois for drug and criminal enterprise offenses and in the Southern District of Florida for racketeering, and $60 million and $50 million forfeiture judgments were entered against him, respectively, as part of his sentences.[2] Over a decade later, Kramer filed a motion for an accounting in the Southern District of Illinois of the amounts collected by the government to satisfy his $60 million forfeiture judgment. The district court granted the motion but, given the complexity of his case, limited the accounting to what was collected in the Southern District of Illinois toward that judgment.

On appeal, Kramer argues that the district court should not have credited to his judgment the amounts forfeited under a 2003 settlement agreement. He also claims that the district court abused its discretion in limiting the accounting only to the amounts that were collected in the Southern District of Illinois. We disagree and affirm the district court's judgment.

In the 1980s, Kramer and his associates oversaw a nationwide drug smuggling operation. The venture was lucrative, generating about $180 million in profits. To keep their ill-gotten gain, they sought the help of Sam Gilbert, who devised an elaborate international money laundering scheme. As

---

[1] Maya Bell and Sentinel Miami Bureau, *Drug Kingpin Hurt in Copter Escape Crash*, Orlando Sentinel, April 18, 1989, https://www.orlandosentinel.com/news/os-xpm-1989-04-18-8904180060-story.html.

[2] The Eleventh Circuit later questioned whether the district court properly imposed a RICO forfeiture judgment against Kramer. *United States v. Gilbert*, 244 F.3d 888, 897 (11th Cir. 2001). That court's decision, however, has no effect on how we resolve this case.

relevant to this appeal, Kramer and his partners loaned $12.6 million of their drug profits to LCP, a business partnership complicit in the scheme, to partly finance the construction of the Bicycle Club, a card club, through which to launder the rest of their money. Kramer and his cohorts left their names off the books for obvious reasons. Regardless, the government eventually caught up with all involved.

Kramer was charged and convicted under the Controlled Substances Act (CSA) and Continuing Criminal Enterprise Act in the Southern District of Illinois, and under the Racketeer Influenced and Corrupt Organizations Act (RICO) in the Southern District of Florida. The Illinois district court sentenced him to life imprisonment without possibility of parole and entered a $60 million forfeiture judgment against him under the CSA, while the Florida district court entered a $50 million forfeiture judgment against him under RICO.

As part of its effort to satisfy these judgments, the government brought forfeiture proceedings in various jurisdictions to acquire property from owners of LCP connected to the $12.6 million criminal loan. The government negotiated settlement agreements with all relevant owners except the so-called Gilbert entities, a collection of family members and an irrevocable trust connected to Sam Gilbert. At a certain point during the money-laundering scheme, the Gilbert entities had purchased shareholder interests in LCP and even bought out Kramer's interest by refinancing the original drug loan through a legitimate financial institution. Kramer did not have a legal basis to prevent this because he did not have an official ownership interest.

The government brought forfeiture proceedings against the Gilbert entities in the Southern District of Illinois to satisfy

Kramer's $60 million CSA forfeiture judgment. They negotiated a settlement agreement, according to which the Gilbert entities ceded a percentage of the profit distributions of the Bicycle Club that existed at the time it was seized by the government, plus interest accrued (less a specified amount). The district court approved it and issued an order of forfeiture in 2003. Kramer did not appeal the district court's judgment or otherwise object to the settlement agreement's terms, though he was a party to the proceedings and had notice.[3]

Over a decade later, Kramer filed an amended 11-count civil complaint in the Southern District of Illinois in a bid to reacquire property that he argued the government was holding in excess of his CSA forfeiture judgment. Under several theories, he asked the district court (1) to find the 2003 settlement agreement invalid and (2) to account for all property seized by the government and return to him the value exceeding $60 million. In several orders, the district court dismissed all counts, save one. Kramer did not appeal any of those orders.

The only matter that the district court did not ultimately dismiss was Kramer's request for an accounting of the amounts forfeited to the federal government and a return of the amount exceeding $60 million. The district court construed that count as a motion for an accounting of the amounts collected on his CSA forfeiture judgment, filed it in Kramer's pre-existing criminal docket, and granted it.[4] (The

---

[3] The criminal docket confirms that the district court issued a Notice of Forfeiture on October 2, 2003, and that the notice was sent to Kramer via service on his then-counsel of record.

[4] Kramer argues that, because the district court refiled his eleven-count complaint in his criminal docket, the judgments entered in the civil

district court dismissed the claim for return of property in the civil docket and informed Kramer that he could refile that claim after the results of the motion for an accounting—Kramer did not appeal that judgment.) Given the sheer complexity and the number of forfeiture proceedings initiated to secure property associated with Kramer and his cohorts' drug empire, the district court limited its accounting to forfeitures conducted in the Southern District of Illinois to satisfy the CSA forfeiture judgment entered against him.

The district court determined in a December 2020 order, from which Kramer appeals, that approximately $2 million (the "settlement amount") had been forfeited under the 2003 settlement agreement between the government and the Gilbert entities. The district court credited the settlement amount toward Kramer's CSA forfeiture judgment.[5] Kramer disputes this accounting.

On appeal, Kramer first challenges the accuracy of the district court's accounting by attacking the 2003 settlement agreement. He contends that the settlement agreement erroneously characterized the settlement amount as "substitute property" under 21 U.S.C. § 853(p), arguing that any property that is directly forfeitable cannot count as substitute property.

docket don't preclude him from remaking those dismissed arguments here. This is incorrect. The district court refiled the entire complaint for convenience and specified that it was only considering count two in the criminal docket. By that time, the court had already dismissed the other counts.

[5] The settlement agreement forfeited $1,944,453.20 to the government to satisfy Kramer's CSA forfeiture judgment. Modest sums, from a refunded special assessment and inmate financial responsibility program, were also applied.

He believes that this error somehow entitles him to the settlement amount.[6]

The problem with this argument is that Kramer forfeited it more than a decade ago. Kramer apparently, yet mistakenly, believes that the district court ordered the forfeiture of the settlement amount in its December 2020 order. In reality, this order merely calculated the monetary amounts that the government had already collected as forfeited property, including the settlement amount, and credited those amounts to his CSA forfeiture judgment according to the terms of the 2003 settlement agreement. Kramer did not appeal the district court's judgment approving the settlement agreement or otherwise object to its terms at the time it was entered almost 20 years ago. He cannot now collaterally attack a judgment that he could have directly appealed. *See Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007).

Furthermore, it's unclear why Kramer thinks, assuming the settlement agreement were invalid, that he would be entitled to the settlement amount. The Gilbert entities bought out Kramer's interest in LCP long ago, *United States v. Gilbert*, 244 F.3d 888, 897 (11th Cir. 2001), and the government initiated forfeiture proceedings against the Gilbert entities because it claimed superior title to both Kramer and the Gilbert entities under the relation-back doctrine, *see* 21 U.S.C. § 853(c).

---

[6] Although we dispose of this contention on other grounds, we note that it appears to be meritless. Property that could have been forfeited as direct proceeds of criminal activity may nevertheless be forfeited later as substitute assets. *See United States v. Smith*, 770 F.3d 628, 641-42 (7th Cir. 2014). Either way, the property is forfeitable.

So either the Gilbert entities or the government owned the interest, but not Kramer. *Kramer v. United States*, No. 3:15-cv-420-JPG, 2020 U.S. Dist. LEXIS 95233, at *3 n.8 (S.D. Ill. June 1, 2020). The settlement agreement resolved that dispute. In any case, Kramer had his chance to raise objections and chose not to do so.

Kramer next argues that the district court's accounting was erroneous because it failed to include all property forfeited in all proceedings related to his criminal enterprise, no matter the jurisdiction. In other words, he wants the district court to calculate the amounts collected by the government in forfeiture proceedings in several jurisdictions to satisfy both his CSA and RICO forfeiture judgments. Relatedly, Kramer contends that, because the Eleventh Circuit determined that the district court failed to properly enter a RICO forfeiture judgment against him, *Gilbert*, 244 F.3d at 918, all properties seized to satisfy that judgment should instead be credited to his CSA forfeiture judgment. This bundle of arguments fails for the simple reason that the district court was well within its rights to limit the scope of the accounting to what the government collected and credited to Kramer's CSA forfeiture judgment in the Southern District of Illinois.

The district courts have jurisdiction to recover or enforce forfeitures under the CSA. 21 U.S.C. § 801 *et seq.*; 28 U.S.C. § 1355. Kramer argues that the standard of review is de novo because it applies when the propriety of a forfeiture order is at issue. *See United States v. Baker*, 227 F.3d 955, 967 (7th Cir. 2000). Be that as it may, we are not reviewing an order of forfeiture but of an accounting. An accounting of amounts collected and owed under a forfeiture order is an equitable tool that a district court may employ to determine if a forfeiture

judgment has been satisfied. *See United States v. Taame*, 830 F. App'x 53, 54 (2d Cir. 2020). We review a district court's grant of an equitable remedy for abuse of discretion. *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 658 F.3d 760, 766 (7th Cir. 2011).

We have determined that it is "appropriate to give great deference to the district court's decision as to the precise equitable relief necessary in a particular case," *Bowes v. Ind. Sec'y of State*, 837 F.3d 813, 817 (7th Cir. 2016), and that an abuse of discretion occurs only when "the district court has made a manifest error of law," or its determination falls outside "the range of reasonable options." *R. L. Coolsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 654 (7th Cir. 1999).

Instead of accepting Kramer's invitation to wade into a complex multidistrict financial assessment involving numerous parties, governmental offices, settlement agreements, and legal proceedings, the district court sensibly limited the accounting to what was owed and collected toward the CSA forfeiture judgment entered in the Southern District of Illinois. Mindful that district courts have wide latitude in selecting appropriate equitable relief, we conclude that the district court did not abuse its discretion in so limiting the scope of the accounting. Kramer offers no authority or persuasive reason to convince us otherwise.

Kramer's remaining contentions rely on his beliefs that the 2003 settlement agreement was invalid and that the district court erred in limiting the scope of the accounting. Because we have found no reversible error in these respects, we do not consider these arguments meritorious and need not discuss them. We commend the district court for assisting Kramer as much as it has. Affirmed.